OPINION
After his motion to suppress evidence was overruled, Eric Middlebrook pleaded no contest to an indicted charge of possession of crack cocaine, a second degree felony. The trial court found Middlebrook guilty and sentenced him to two years imprisonment.
On appeal, Middlebrook advances two assignments of error, both of which involve the suppression motion. The first involves a question of fact; the second involves a question of law.
 "1. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT APPELLANT'S CONSENT TO SEARCH HIS ROOM WAS LEGALLY OBTAINED."
The parties each presented two witnesses. The trial court expressly credited the testimony of the State's witnesses over that of Middlebrook and his girlfriend, Shelly Harris, where their testimony conflicted.
The State's evidence was as follows. During the afternoon of June 1, 2000, Fairborn detectives Fred Meadows and William Wertz went to the Red Roof Inn after motel management personnel called the police. According to motel employees interviewed at the scene, three large stacks of money had been observed in room 314, occupied by Antoine Smith, and trash had been removed from room 302, occupied by Middlebrook and Harris. The trash contained cigar wrappings, which are used to hold marijuana. The two rooms were "affiliated" meaning, according to Detective Wertz, that Smith and Middlebrook had been in each other's rooms and had been seen together. Middlebrook and Harris had told the cleaning lady, Georgianna McMorris, that they didn't want anymore room service.
Believing that room 302 might contain drugs, the detectives decided to bypass the more cumbersome procedure of obtaining a search warrant in favor of obtaining Middlebrook's consent to the search of room 302. The detectives went to room 302 and knocked on the door. Middlebrook opened the door and stepped out onto the balcony outside the room. As he stood at the open doorway, Detective Wertz could see a small amount of marijuana on a table inside the room.
The detectives informed Middlebrook of their suspicions, told Middlebrook they thought they would find drugs or drug paraphernalia in the room, and asked if he would consent to a search of the room. Detective Wertz told Middlebrook he would "attempt to get a search warrant" if Middlebrook did not consent to a search. Middlebrook acted as if he had nothing to hide and verbally agreed to a search of the room. The detectives wanted a written consent and presented Middlebrook with a consent to search form which Detective Wertz explained to him in detail. The form which Middlebrook signed read in pertinent part:
 "I, Eric Middlebrook, having been informed of my constitutional right not to have a search made of the premises/vehicle hereinafter described without a search warrant, and my right to refuse to consent to such, hereby authorized Det. William Wertz And Detectives of the Ace Task Force, Agents of the Greene County Interagency Investigative Unit, Greene County, Ohio to conduct a complete search of the premises/vehicle hereinafter described for Narcotics/Currancy.
 "The premises is described as a Red Roof Motel, Located at Col. Glenn Hwy. In the City of Fairborn, Greene County, Ohio.
"* * *
 "I am giving this written permission to the above named agents voluntarily and without threats or promises of any kind."
The detectives obtained both the verbal and signed written consent before they entered the room. Middlebrook "had every chance not to let (the detectives) in the room" and his consent to search was, based on Detective Wertz's training and experience, voluntary. Two or three police officers were present when Middlebrook gave his consent to search.
After the detectives entered the room, Middlebrook used the bathroom. While he was in the bathroom, Detective Wertz picked up a pair of shorts from the floor and found a quantity of crack cocaine in them. When he exited the bathroom, Middlebrook acknowledged that the shorts were his.
Harris testified that she and Middlebrook had not left the room since checking in the night before. She stated that after Middlebrook opened the door, Detective Wertz came about five feet into the room. He told Middlebrook to come outside, and that he wanted him to sign a paper permitting the detectives to search the room. Middlebrook didn't want to sign the paper, but Detective Wertz said he was going to search anyway. Harris said she didn't know marijuana was in the room or that Middlebrook had crack cocaine. She said there had been no room service.
Middlebrook testified that he had left the room for five minutes after checking in and before the arrival of the detectives. He said he had told room service to leave. He stated that Detective Wertz told him he suspected the room contained drugs and asked for consent to search. Wertz came four to five feet into the room. Middlebrook told Detective Wertz he didn't want to sign the consent form, and Detective Wertz replied that the detectives would search anyway because they'd seen marijuana in plain view. Middlebrook went outside with Detective Wertz. Detective Wertz did not explain the form to him although he gave it to him to read. Middlebrook said he didn't read the form, didn't know he had a right to refuse the detectives' permission to search, and signed the consent to search form after Detective Wertz told him, "Well, I'll call the prosecutor's office and have them give me a search warrant."
It is fundamental that where, as here, the trial court must determine the credibility of witnesses, a reviewing court must be deferential to the trial court's determinations as to credibility. Here, the trial court expressly found the detectives' testimony credible and that of Middlebrook and Harris "wanting." Our review of the testimony affords us with no basis for second guessing the trial court.
Based upon the version of the facts that the trial court credited, the State met its burden of establishing by clear and positive evidence that Middlebrook's consent was freely and voluntarily given. See State v.Posey (1988), 40 Ohio St.3d 420, 427, quoting Schneckloth v. Bustamonte
(1973), 412 U.S. 218, 227, holding:
 ". . . that `whether a consent to search was in fact `voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances.'"
The first assignment of error is overruled.
 "2. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN REFUSING TO SUPPRESS EVIDENCE OBTAINED BEYOND THE SCOPE OF APPELLANT'S ALLEGED CONSENT."
Middlebrook consented to a search of the "premises." The question presented under this assignment is whether "premises" encompassed Middlebrook's shorts, which were lying on the floor.
As a preliminary matter, we note our agreement with the State that this question has not been properly preserved for appellate review. Trial counsel did not raise this issue in either his motion to suppress or post-hearing memorandum in support of suppression.
Nevertheless, in the interest of resolving this assignment on the merits, we express our judgment that "premises" encompassed clothing that was lying on the floor. It would be a different story if Middlebrook had been wearing the shorts, but that is not the situation presented here.
The facts of this case are similar, for purposes of analysis, to those in Florida v. Jimeno (1991), 500 U.S. 248. In that case, the police asked Jimeno for permission to search his car for drugs. Jimeno gave his consent, and the police found a kilogram of cocaine inside a folded brown paper bag on the floorboard. The issue in Jimeno — similar to the issue here — was whether Jimeno's unqualified consent to the search of his car encompassed examination of the paper bag lying on the floor of the car. The court stated:
 "The question before us, then, is whether it is reasonable for an officer to consider a suspect's general consent to a search of his car to include consent to examine a paper bag lying on the floor of the car. We think that it is.
 "The scope of a search is generally defined by its expressed object. United States v. Ross, 4556 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). In this case, the terms of the search's authorization were simple. Respondent granted Officer Trujillo permission to search his car, and did not place any explicit limitation on the scope of the search. Trujillo had informed respondent that he believed respondent was carrying narcotics, and that he would be looking for narcotics in the car. We think that it was objectively reasonable for the police to conclude that the general consent to search respondent's car included consent to search containers within that car which might bear drugs. A reasonable person may be expected to know that narcotics are generally carried in some form of a container. "Contraband goods rarely are strewn across the trunk or floor of a car." Id., at 820, 102 S.Ct., at 2170. The authorization to search in this case, therefore, extended beyond the surfaces of the car's interior to the paper bag lying on the car's floor.
"* * *
 "Respondent argues, and the Florida trial court agreed with him, that if the police wish to search closed containers within a car they must separately request permission to search each container. But we see no basis for adding this sort of superstructure to the Fourth Amendment's basic test of objective reasonableness. Cf. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A suspect may of course delimit as he chooses the scope of the search to which he consents. But if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." Pp. 251-2.
In our judgment, it was as objectively reasonable for the detectives here to conclude that Middlebrook's consent to search the premises extended to examining the shorts lying on the motel room floor as it was for Officer Trujillo to conclude that Jimeno's consent to search his car extended to examining the paper bag on the car floor. Here, as inJimeno, Middlebrook had been informed about what the detectives were looking for. Thus, the detectives reasonably concluded that Middlebrook's consent to search the premises extended to examining a pair of shorts, the pockets of which were an obvious place to carry drugs.
The second assignment is overruled.
The judgment will be affirmed.
FAIN, J. and YOUNG, J., concur.